**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KENRICK FONCETTE,** | : | **CIVIL NO. 1:CV-05-2453** |
| **Petitioner,** | : | |
| | : | **(Chief Judge Kane)** |
| v. | : | |
| | : | |
| **BUREAU OF IMMIGRATION** | : | |
| **CUSTOMS AND ENFORCEMENT** | : | |
| **Respondent** | : | |

**MEMORANDUM AND ORDER**

Presently before the court is petitioner's motion for summary judgment pursuant to FED. R. CIV. P. 56. (Doc. 30). For the reasons set forth below, the motion will be granted.

**I. Procedural Background**

On November 10, 2005, the matter was transferred to this Court by the United States Court of Appeals for the Third Circuit "for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section of 2201 of Title 28," pursuant to 8 U.S.C. § 1252(b)(5)(B). (Doc. 1). This Court has jurisdiction pursuant to 8 U.S.C. § 1252(b)(5)(B) which states that "[i]f the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States . . . for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28." § 1252(b)(5)(B).

The matter was scheduled for a hearing. (Doc. 6). The parties sought, and were granted, several continuances of the hearing date. (Docs. 9, 12, 14). In February 2006, the parties filed a "Joint Motion for a Continuance." (Doc. 20). In that motion, which was prepared by respondent's attorney, the parties agreed "that the sole issue is whether petitioner's parents became legally separated, as contemplated by

8 U.S.C. § 1432(a), at any point before petitioner reached the age of eighteen in 1978." (Id. at p. 1, ¶ 2). The parties further stated the following:

> 6.  In his [trial] brief, petitioner detailed ongoing efforts by his mother, in his native Trinidad seeking to have the High Court of that country declare that an order of separation had been granted to his mother by the Trinidad courts in July of 1962.
>
> 7.  Such a declaration is necessary since the court records for that period have apparently been destroyed.
>
> 8.  The parties agree that since the Trinidad courts would have had jurisdiction over the marriage of petitioner's parents during the time periods relevant to these proceedings, a finding by the High Court that the Trinidad courts had issued a separation order to petitioner's mother in July of 1962 would likely resolve the nationality claims at issue in this case.

(Id. at p. 2, ¶¶ 6-8). Based on these representations, the joint motion for a continuance was granted and the case was administratively closed. (Doc. 22).

On June 27, 2006, the parties notified the Court that, on May 19, 2006, the High Court of Trinidad issued a declaration that petitioner's mother had been the beneficiary of an order of separation since 1962. (Docs. 27, 28). Respondent took the position that the declaration was insufficient to confer derivative citizenship on petitioner and requested that this Court review the matter. (Doc. 27, p. 2). Petitioner contended "that both parties agreed that the issue of whether Petitioner's parents had legally separated was the sole issue in the case at bar, as acknowledged by Respondent in the Notice. Petitioner therefore wishes to be accorded an opportunity to file with the Court a Motion for Summary Judgment. . . ." (Doc. 28, p. 2).

On June 30, 2006, the case was reopened and petitioner was afforded the opportunity to file a motion for summary judgment. That motion is fully briefed and is presently ripe for disposition.

II. Statement of Facts

On May 25, 2004, a Notice to appear was issued by the Bureau of Immigration and Customs Enforcement ("ICE"). (Doc. 54, Ex. B). ICE alleged that petitioner was not a citizen of the United States. Rather, he was a native and citizen of Trinidad and Tobago who was admitted to the United States on or about September 8, 1974. (Id.). He was subject to removal pursuant to Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("Act"), as amended, in that he was convicted of an aggravated felony as defined in sections 101(a)(43)(F) (G) and (U) of the Act. He was also subject to removal pursuant to Section 237(a)(2)(C).

On October 13, 2004, petitioner filed an Application for Citizenship stating that he was claiming United States citizenship through his United States citizen mother, who became a naturalized citizen on May 29, 1974. (Doc. 54, Ex. I). His request was denied on November 3, 2004. The district director stated that "[i]nasmuch as only one of your parents became a United States citizen before you were eighteen years of age, and since your mother and father did not obtain a legal separation /divorce, with legal custody over you accorded to your citizen parent before your eighteenth birthday, you did not derive citizenship as a result of your mother's naturalization." (Id. at Exs. I, K).

On March 15, 2005, ICE issued a decision and order concerning petitioner's application for derivative United States citizenship pursuant to 8 U.S.C. § 1432(a)(3). (Id. at Ex. M). The application was denied due to petitioner's failure to establish that his parents were legally separated. This denial resulted in the Immigration Judge issuing an order of removal from the United States to Trinidad and Tobago. (Id.). Petitioner appealed the decision. In August 2005, the Board of Immigration Appeals found that he failed to establish that his parents were ever legally separated and the appeal was dismissed. (Id. at Ex. N).

Petitioner timely filed a petition for review with the United States Court of Appeals for the Third

Circuit, which then transferred the matter to this Court to resolve the issue of petitioner's derivative citizenship. As noted above, the matter was administratively closed while the issue of legal separation was pursued by petitioner's mother, Whilma Virginia Jacob-Foncette ("Jacob-Foncette"), in the High Court of Trinidad. Specifically, Jacob-Foncette sought an order from the court declaring that since 1962, her marital status had been governed by section 4 of the Separation and Maintenance Act. (Doc. 34, p. 9, ¶ 27). The following has been extracted from the record before the High Court of Trinidad.

Jacob-Foncette married Kenneth Foncette in 1955 and had four children, including petitioner. (Doc. 34, p. 2, ¶¶ 2, 3, p. 11). Shortly after being married, Kenneth Foncette engaged in extra-marital affairs. In December 1961, after she confronted her husband about having extra-marital affairs, he left the marital home and did not return. (Id.). He failed to provide her, or the children, with financial support. After approximately six months, because her savings were depleted and she had no income, she was compelled to file an application for maintenance and for a Separation order. (Id. at p. 3, ¶¶ 7, 8). Anthony Jacob, Jacob-Foncette's brother, confirmed that Kenneth Foncette and Jacob-Foncette had marital difficulties which resulted in Jacob-Foncette applying for an order of maintenance and separation. (Doc. 35).

A hearing on the application was held in July 1962. Both Jacob-Foncette and Kenneth Foncette appeared for the hearing. Anthony Jacob was also present at the hearing. (Id.). Jacob-Foncette testified that her husband had abandoned her and the children, and had stopped supporting the family. (Doc. 34, p. 4, ¶ 10). She also testified that she had no intention of living with him again. (Id.). Kenneth Foncette was ordered to pay maintenance in the amount of five dollars per week. (Id.) He was never seen by Jacob-Foncette again, and never paid the ordered maintenance. Jacob-Foncette eventually secured employment which enabled her to support her family.

In 1967, she left her children in the care of her parents and lawfully emigrated to the United States as a domestic worker. (Id. at ¶ 12). She was granted citizenship in 1974. On September 8, 1974, Jacob-Foncette filed an immigration petition, which enabled the petitioner and his siblings to immigrate to the United States. (Id.). Therein, Jacob-Foncette indicated that she was separated from her husband.

Kenneth Foncette entered the United States in 1987. On his "Application for Immigrant Visa and Alien Registration" he identified his marital status as being "separated." (Doc. 54, Ex. L). Although he indicated that he intended to join Jacob-Foncette, he never made contact with her. However, he did make contact with one of his children, Karen Foncette-Moore. In 1994, Foncette died in an accident at his workplace. (Doc. 45, p. 2).

Jacob-Foncette argued before the High Court of Trinidad that both she and her son "believe that the U.S. government cannot deport him because he is a derivative Citizen of the United States" and, that in order for her to establish derivative citizenship, she must obtain proof of the 1962 separation in Trinidad. (Doc. 34, p. 7, ¶¶ 22, 23). She informed the Court that she traveled to Trinidad to obtain the court record of the maintenance and separation order issued against her husband in July 1962, and that Eugene Prince, the Clerk of the Peace II, contacted the vault attendant[1] at the Port of Spain Magistrates' Court to conduct a diligent search. (Doc. 34, p. 8, ¶ 25, Doc. 51). Although the vault attendant was aware that most of the 1962 records were destroyed by a flooding disaster, he conducted a thorough search of the records and confirmed that the records were not available. (Doc. 48, p. 2, ¶¶ 2, 3). "[D]ue to a severe storm in 1986, the roof of the building housing the Archives caved in and the records stored at that location all became water logged and were not salvageable. They were destroyed." (Doc. 51,

---

[1] The vault attendant's duties include storing, safekeeping, retrieving and binding of records.

p. 2, ¶ 7). In March 2005, Mr. Prince sent a letter to Jacob-Foncette informing her that "all the court records relating to Maintenance/Separation Orders from 1962 at that Port of Spain Magistrates Court were destroyed in a severe storm back in 1986." (Id. at ¶ 26; Doc. 34, p. 20).

Also considered by the High Court of Trinidad was the affidavit of a Trinidad attorney and a memorandum of law of another Trinidad attorney, both of which detailed the laws applicable in 1962 and the consequence of filing an application under the Separation and Maintenance Act of 1934. These documents indicated that an order obtained pursuant to the Act would have "the effect in all respects of a decree of judicial separation on the grounds of cruelty." (Doc. 52, p. 4, ¶ 10). The laws were summarized as follows:

> Having once tied the knot of marriage, it was not to be easily unloosed. For example, section 178 of the Supreme Court of Judicature (Consolidation) Act 1925 stipulates that if on the evidence, the court is not satisfied that the alleged adultery has bee[n] committed, or if the court finds that the petitioner has connived at or condoned the adultery then the court shall dismiss the petition.
>
> If the court found that the petition was proved, then it still was not bound to pronounce a decree of divorce if it also found that the petitioner had himself, (or herself) been guilty of adultery, or had delayed unreasonably in presenting the petition or had been guilty of cruelty to the other party.
>
> In these circumstances, and having regard to the fact that a spouse had enforceable conjugal rights including a right of cohabitation, and a right to consortium, a poor person who had not the wherewithal to embark upon a full divorce hearing, could seek relief in the Magistrate's Court, which was a Court of summary jurisdiction. Such relief would be sought under the Separation and Maintenance Act which came into force on 20th December 1934.
>
> That Act provided that any woman whose husband had deserted her could apply for an Order. Upon any such application, the Magistrate could make an order containing a provision that the applicant be no longer bound to cohabit with her husband. That provision had the effect in all respects of a decree of judicial separation on the ground of cruelty.

(Id. at ¶¶ 7-10.).

On May 19, 2006, following a hearing, the Republic of Trinidad and Tobago, In the High Court of Justice, issued a declaration of status declaring that Jacob-Foncette "is and has been, since July 1962, the beneficiary of an order under section 4(1) of the Separation and Maintenance Ordinance Chapter 5 No. 15 of the Laws of Trinidad and Tobago whereby she became legally separated from her husband, Kenneth Foncette, now deceased." (Doc. 33).

**III.  Standard of Review**

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986).  A factual dispute is material if it might affect the outcome of the suit under the applicable law.  Anderson, 477 U.S. at 248.  A factual dispute is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the nonmoving party.  Id. at 249; Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  When deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, who is "entitled to every reasonable inference that can be drawn from the record." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000).  "The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other."  Anderson, 477 U.S. at 248.

The moving party has the initial burden of identifying evidence that it believes shows an

absence of a genuine issue of material fact. Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, the nonmoving party may not simply sit back and rest on the allegations in the complaint. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." Id. at 322.

With respect to the sufficiency of the nonmoving party's evidence, a court should grant summary judgment where the nonmovant's evidence is merely colorable, conclusory or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**IV. Discussion**

Petitioner was not born in the United States and has never been formally naturalized. His citizenship claim is derivative upon his mother's naturalization. The burden of proof of eligibility of citizenship lies with petitioner. Berenyi v. District Director, INS, 385 U.S. 630, 637 (1967).

At the times relevant to this matter, the parties agree that the requirements for derivative citizenship were as follows:

> (a) A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon the fulfillment of the following conditions:
>
> > (3) the naturalization of the parent having legal custody of the child

8

> when there has been a legal separation of the parents . . . ; and if
>
> (4) such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent . . . , or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432(a)((3), (4). Thus, petitioner must prove the following: (1) that his mother was naturalized after legal separation from his father; (2) that his mother had legal custody at the time of her naturalization; (3) that his mother was naturalized before he turned eighteen; and (3) that he began to permanently reside with his mother while under the age of eighteen. The only disputed issue in this case is whether petitioner's mother, Jacob-Foncette, was legally separated from his father, Kenneth Foncette, when she was naturalized. (Doc. 54, p. 1) ("The parties agree that the sole issue is whether petitioner's parents became legally separated, as contemplated by 8 U.S.C. § 1432(a), at a point before his mother's naturalization in 1974, and before Foncette reached the age of eighteen in 1978"). For the reasons set forth below, the Court finds that Jacob-Foncette was legally separated and that petitioner is entitled to derivative citizenship.

"[A] legal separation for purposes of § 1432(a) occurs only upon a formal government action, such as a decree issued by a court of competent jurisdiction that, under the laws of a state or nation having jurisdiction over the marriage, alters the marital relationship of the marriage." <u>Morgan v. Attorney General of the United States</u>, 432 F.3d 226, 234 (3d Cir. 2005). It is undisputed that the Republic of Trinidad and Tobago, In the High Court of Justice, had jurisdiction over the marriage. It is also undisputed that the court declared that Jacob-Foncette "is and has been, since July 1962, the beneficiary of an order under section 4(I) of the Separation and Maintenance Ordinance Chapter 5 No. 15 of the Laws of Trinidad and Tobago whereby she became legally

9

separated from her husband, Kenneth Foncette, now deceased." (Doc. 33). This is clear evidence of a legal separation obtained by formal governmental action for purposes of § 1432(a).

In opposition to petitioner's motion, respondent argues that the court's declaration of Jacob-Foncette's legal status is simply a *nunc pro tunc* order which is insufficient to meet the requirement of proving a legal separation. The Court disagrees. The recent order of the High Court recognized the existence of the original judicial determination that Foncette's parents were the beneficiaries of a legal separation under the laws of Trinidad and Tobago in 1962. "Although uniformity is an important concern in federal statutory interpretation, see, e.g., Kahn v. INS, 36 F.3d 1412, 1414 (9th Cir.1994), where the term in question involves a legal relationship that is created by state or foreign law, the court must begin its analysis by looking to that law. See De Sylva [v. Ballentine, 351 U.S. 570, 580 (1956)], 76 S.Ct. 974. 'This is especially true where a statute deals with a familiar relationship.' Id. (noting that there is no federal law of domestic relations)." Minasyan v. Gonzales, 401 F.3d 1069, 1076 (9th Cir. 2005). The recent proceeding brought before the High Court was not designed to retroactively change the legal relationship of the parties. See Minasyan v. Gonzales, 401 F.3d at 1080, n. 20 (citing Fierro v. Reno, 217 F.3d 1, 6, (1st Cir. 2000) (holding that a *nunc pro tunc* order which retroactively changed the legal relationship is insufficient to meet the criteria of the section 321 of the Immigration and Naturalization Act). The clear intention was to establish that a legal separation was obtained back in 1962.

Respondent next argues that the findings of the High Court should be rejected. [2] Normally

---

[2] These doubts arise from Respondent's contentions that the only direct evidence considered by the High Court was affidavits by petitioner's mother and uncle, that petitioner's mother lacked credibility in that she made contradictory statements about her marital status during the removal proceedings, that the High Court's order was obtained to circumvent the immigration laws of the United States, and that petitioner's father's indication that he was entering the country with the

when a court decides whether to grant comity to a foreign judicial act, it rules in response to a motion by a litigant for a stay pending disposition of the foreign action. Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, S.A., 44 F.3d 187, 191 -192 (3d Cir. 1994). Notably, the parties entered into an agreement whereby they requested that this Court grant a stay to enable the petitioner's mother to pursue foreign court proceedings. They also agreed on the impact the proceedings would have on this action. Specifically, it was stated in the parties' joint motion for a continuance, which was prepared by respondent's attorney, that "the parties agree that since the Trinidad courts would have had jurisdiction over the marriage of petitioner's parents during the time periods relevant to these proceedings, a finding by the High Court that the Trinidad courts *had* issued a separation order to petitioner's mother in July of 1962 would likely resolve the nationality claims at issue in this case." (Doc. 20, p. 2) (emphasis in original). Although respondent reserved the right to make a final determination as to whether the issue was resolved until the order was actually issued, this reservation was based on whether the order would conclude that a separation order "had" been issued to petitioner's mother in 1962. It is clear from the language of the order that the High Court concluded that petitioner's mother was the beneficiary of a separation order in 1962.

Further, as noted by petitioner, Respondent "fails to explain why this Honorable Court should forsake the well-accepted principles of parity and comity, used by U.S. courts to enforce and respect foreign judgments in the United States. . . ." (Doc. 58, p. 12) (citing Hilton v. Guyot, 159 U.S. 113, 164, 193 (1895)).

> International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its

---

intent of residing with petitioner's mother establishes that the parties were not separated.

> own citizens or of other persons who are under the protection of its laws." <u>Hilton v. Guyot</u>, 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895); <u>see</u> <u>Remington Rand v. Bus. Sys. Inc.</u>, 830 F.2d 1260, 1266 (3d Cir.1987). Generally, United States courts will not review acts of foreign governments and will defer to proceedings taking place in foreign countries, allowing those acts and proceedings to have extraterritorial effect in the United States. <u>See, e.g., Somportex Ltd. v. Philadelphia Chewing Gum Corp.</u>, 453 F.2d 435, 440-44 (3d Cir.1971); <u>Pravin Banker Assocs. v. Banco Popular Del Peru</u>, 109 F.3d 850, 854 (2d Cir.1997). But a court may deny comity to a foreign legislative, executive, or judicial act if it finds that the extension of comity "would be contrary or prejudicial to the interest" of the United States. <u>Somportex</u> 453 F.2d at 440.

<u>Gross v. German Foundation Indus. Initiative</u>, 456 F.3d 363, 392-93 (3d Cir. 2006). Because there is no evidence that the extension of comity would be contrary or prejudicial to the interest of the United States, respondent's argument is rejected.[3]

**V. Conclusion**

It is undisputed that the Republic of Trinidad and Tobago, In the High Court of Justice, had jurisdiction over the marriage. It is also undisputed that the court declared that Jacob-Foncette "is and has been, since July 1962, the beneficiary of an order under section 4 (I) of the Separation and Maintenance Ordinance Chapter 5 No. 15 of the Laws of Trinidad and Tobago whereby she became legally separated from her husband, Kenneth Foncette, now deceased." (Doc. 33). This is clear evidence of a legal separation obtained by formal governmental action. <u>Morgan</u>, 432 F.3d at 234. Consequently, petitioner is entitled to a declaratory judgment in his favor as he has met his burden of establishing derivative citizenship pursuant to 8 U.S.C. § 1432(a).

**VI. Order**

**AND NOW**, this 17th day of January, 2007, upon consideration of petitioner's motion for

---

[3]The court finds respondent's argument that the order was obtained in an effort to circumvent the immigration laws of the United States disingenuous in light of the parties' agreement concerning the foreign court proceedings and their impact on this action.

summary judgment (Doc. 30), and for the reasons set forth above, **IT IS HEREBY ORDERED THAT:**

    1. Petitioner's motion for summary judgment (Doc. 30) is GRANTED. Petitioner is entitled to a declaratory judgment in his favor as he has met his burden of establishing derivative citizenship pursuant to 8 U.S.C. § 1432(a).

    2. The Clerk of Court is directed to ENTER judgment in favor of petitioner and against respondent.

    3. Respondent is directed to show cause on or before January 22, 2007, as to why Respondent should not be directed to release Petitioner forthwith.

                                                                 S/ Yvette Kane
                                                                 Yvette Kane, Chief Judge
                                                                 United States District Judge